187 So.2d 321 (1966)
SCOTT COUNTY CO-OP and Billy Mack Babb, Defendants-Appellants,
v.
Mrs. Morris BROWN, Plaintiff-Appellee.
No. 43980.
Supreme Court of Mississippi.
June 6, 1966.
*322 George F. Woodliff, W. Swan Yerger, Heidelberg, Woodliff & Franks, Jackson, for appellants.
Gordon & Henry, Union, O.B. Triplett, Jr., Forest, for appellee.
GILLESPIE, Presiding Justice.
Mrs. Morris Brown, plaintiff below and appellee here, recovered a judgment for personal injuries against Scott County Co-op, a corporation, and its employee, Billy Mack Babb, defendants below and appellants here.
The plaintiff charged in her declaration that she was a passenger in an automobile traveling in a westerly direction on the inside lane of a four-lane highway in the City of Forest, Mississippi, and when the automobile stopped for a traffic light at an intersection, she received serious personal injuries when it was struck from the rear by a truck owned by Scott County Co-op and driven by its employee, Billy Mack Babb. The declaration charged that appellant Babb was negligent in his operation of the truck because he failed to maintain a proper lookout for other vehicles upon said highway, and failed to maintain free and easy control of said truck. The answer of the defendants denied the charges of negligence, but admitted that the truck ran into the rear of the automobile in which the plaintiff was riding. Defendants alleged as an affirmative defense that the brakes on *323 one of the rear wheels of the truck failed as a result of a latent defect, resulting in a complete brake failure, thereby permitting the truck to run into the rear of said automobile.
The issues of fact on the question of liability were (1) whether defendant Babb maintained a proper lookout for other vehicles upon the highway, and (2) whether the defendants knew or, in the exercise of reasonable care, should have known that the brakes on the truck were defective. The second fact issue could be stated in terms of failure to maintain reasonable control of the truck.
On the issue as to whether Babb maintained a proper lookout, the evidence was in conflict. Babb testified that when he was about the length of his truck to the rear of the automobile in which the plaintiff was riding, the brakes suddenly failed, and he could not turn to the right because of automobiles in the outside lane, and he could not turn to the left because a vehicle coming from the west was starting to cross the intersection as the light changed to green. He testified that he had no alternative to running into the rear of the automobile directly in front of him. Witnesses for the plaintiff denied the presence of the automobile in the outside lane of the two westbound traffic lanes and denied the presence of the vehicle in the inside lane for eastbound traffic. We are of the opinion that this conflict in the testimony was for the jury to determine and that there was sufficient evidence to justify a finding by the jury that Babb negligently failed to maintain a proper lookout, and that such negligence was a proximate cause of the plaintiff's injuries.
On the issue as to whether Babb maintained free and easy control, or reasonable control, of the truck, the evidence is also conflicting. On behalf of the plaintiff, it was admitted that the truck ran into the rear of the automobile in which the plaintiff was riding. Several witnesses testified on behalf of plaintiff that immediately after the accident defendant Babb stated that he did not have any brakes on the truck and this fact was known to the people at the Scott County Co-op. Several mechanics testified concerning the condition of the brakes on one of the rear wheels of the truck. The brake springs were loose, and one spring and other parts, including the fluid line, had been broken. According to these witnesses, the broken spring had been worn by being loose in the wheel for a considerable amount of driving and that the loose spring would make a noise that could have been heard. The proof is somewhat inconclusive concerning the cause of the brake failure, but there is no question but that the truck had defective brakes. There was a sharp conflict in the testimony on the factual issue as to whether the condition of the brakes was known to defendants or, in the exercise of reasonable care, should have been known prior to the time the truck was operated on the day of the accident. The fact that the truck did have defective brakes and the conflict in the testimony concerning the statement made by defendant Babb immediately after the accident, together with the testimony of the mechanics, made a jury issue as to whether the defendants knew or, in the exercise of reasonable care, should have known that the truck had defective brakes.
The appellants argue that they were entitled to a directed verdict and also that the verdict of the jury in favor of the plaintiff was against the overwhelming weight of the evidence. We are of the opinion that there is no merit in either of these contentions. For the reasons already stated, the issues of fact were for the determination of the jury.
Defendants assign as error the action of the trial court in overruling their motion for a mistrial during the closing argument. The court reporter took notes of the arguments of plaintiff's counsel in the closing *324 argument. One of plaintiff's counsel made the following statement:
And Gentlemen, in all deference to Scott County, I believe you have confidence in us lawyers to know that we will collect a judgment in such a way as to not hurt the defendants, Junior Madden or the Scott County Co-op.
When counsel made this statement to the jury, defendants objected, and the court sustained the objection. Defendants then moved for a mistrial, and this was overruled. All of these proceedings were included in a bill of exceptions signed by the trial judge at the end of the trial, which was on July 1, 1965. The court recessed on July 1, 1965, until July 6, and upon the opening of court on July 6, counsel for both parties were in court for the purpose of arguing a motion for a new trial filed by defendants, and at that time, counsel for plaintiff filed a motion to amend the bill of exceptions so as to show statements attributed to two of defendants' counsel. Appellee contended in the trial court and contends here that the statement made by plaintiff's counsel and quoted above was not sufficient to inject the question of insurance into the case, and if it was, it was justified because it was in response to statements made by defendants' counsel. There was a sharp dispute as to the statements attributed by appellee to one of the attorneys for defendants, and a lengthy hearing was had as to what was actually said by defendants' counsel, and all of the lawyers involved in the case testified. The court allowed the amendment to the bill of exceptions, but generally held that the requested amendment was not correct. In ruling on the motion of plaintiff to amend the bill of exceptions, the court stated the following with reference to the statement made by two of defendants' counsel, and which plaintiff contends justified the remarks made by plaintiff's counsel:
* * * Mr. Woodliff referred to that a number of times in his argument and made the statements substantially as follows that:
`So don't you know that if there had been anything wrong with this truck, Mr. Madden wouldn't have let it go out that it was his responsibility to see that the truck was in good shape and that if it was not in good shape and it caused any trouble or accident, then that he would be to blame.'
I do not think that Mr. Woodliff, I am positive that he never did say or infer that Mr. Madden would be financially responsible for any judgment but the inference certainly was clear and strong that he would be to blame if anything happened to one of those trucks and he had let it go out without being in good condition. And he went on at length in his argument and said that Dr. Willey, I believe, had testified that Mrs. Brown had all the ailments and complaints that are set out in the record from 1954, I believe, up to date, and that his testimony was largely subjective and he argued at length, strongly, that this kind of testimony should not be accepted by the jury because he had to go on subjective statements and testimony, and he made the statement substantially to the effect that he did not believe that this jury would award a judgment in favor of this woman and these lawyers. I do not know whether he said against the company or not, but I do remember him saying `and these lawyers.' He was standing opposite that table, half way turned around  about facing the fan over there, with his right arm extended, making a gesture back toward that end of the counsel table. No objection was made by the plaintiff or any of the other attorneys to any statement or argument of Mr. Woodliff.
At the close of Mr. Woodliff's argument, Mr. Roy Noble Lee followed him, closed the argument for the defendants, and in his suave and able manner, he referred to the fact that he and Mr. Madden were friends and that the Scott *325 County Co-op was located just over the tracks and that he lived just up the street from them. I don't think he used the word road  just `up the street from it' and that the gentlemen of the jury knew what the Co-op had been to Scott County. That is substantially what was said and he admits that substance.
We are of the opinion that when plaintiff's counsel stated "we will collect a judgment in such a way as to not hurt the defendants, Junior Madden or the Scott County Co-op," the only purpose and effect of such a statement was to inform the jury that someone other than Junior Madden and the Scott County Co-op would pay the judgment. It was tantamount to saying to the jury that Scott County Co-op was protected by liability insurance, and this Court has held that such statements are improper and highly prejudicial. There is little difference in the statement made by plaintiff's counsel in Byram v. Snowden, 224 Miss. 74, 79 So.2d 541 (1955) and the statements involved in the present case, and we are of the opinion that under the authorities of Byram v. Snowden, supra and Morris v. Huff, 238 Miss. 111, 117 So.2d 800 (1960), the statement made by plaintiff's counsel in the present case entitled defendants to a mistrial, and the trial court erred in overruling the motion for a mistrial. We are of the opinion that the fact that Junior Madden was not a defendant is an immaterial fact. We have carefully considered the statement attributed to Mr. Woodliff, and we agree with the trial judge who stated that Mr. Woodliff did not say or infer that Mr. Madden would be financially responsible for any judgment. We find nothing in the statements attributed by the trial judge to counsel for defendants that would justify the statement made by counsel for plaintiff. Neither of the statements made by counsel for defendants was directed to the question as to who would pay any judgment rendered in favor of plaintiff, therefore, Snowden v. Webb, 217 Miss. 664, 64 So.2d 745, 65 So.2d 839, 67 So.2d 251, 39 A.L.R.2d 93 (1953) does not apply.
The trial judge commented upon the fact that no objection was made to the statements attributed to Mr. Woodliff and Mr. Lee. We are of the opinion that the better practice would be for counsel to object to any argument that he believes is improper or that might justify a response which would otherwise be improper. If this had been done in the present case, there would have been no need for the lengthy hearing on the motion to amend the bill of exceptions which occurred five or six days after the trial ended. It would also eliminate the necessity of attorneys testifying against each other as to what was said or done during the heat of a trial. It is not desirable for attorneys to testify in cases in which they are engaged as counsel, and it should be avoided whenever possible.
We are of the opinion and so hold that the statement made by appellee's counsel was not justified by anything said by counsel for defendants. It is argued that the court could have construed the statement made by appellee's counsel to mean that the judgment would be collected from Billy Mack Babb or perhaps in installments from the Scott County Co-op, so as not to hurt them. We are of the opinion that there is no merit in this contention.
Error is assigned because of the admission in evidence over objection by defendants of the testimony of Dr. Willey, a general practitioner, but who was at one time on the staff of State Hospital at Whitfield in the field of psychiatry, and who pursued that specialty while in military service. He testified that he had seen plaintiff on March 3 and on June 8, 1965. (The accident was on June 29, 1963, and the case was tried June 30, 1965.) Based on these two observations and a letter from Dr. Peebles, who treated plaintiff following the accident, Dr. Willey testified as follows:
Well, I think this woman is what we say approaching a pre-psychotic state. I don't think she is really psychotic at this time but she is on the fence and *326 must (sic) maybe a little bit more trauma or unpleasantness in her environmental surroundings might push her into a deep psychotic state.
As to whether plaintiff's mental condition was caused by the accident, Dr. Willey first stated, "Very likely." Upon being again asked by plaintiff's counsel for an opinion on the question of causation, Dr. Willey stated, "I am of the opinion that it could have been." After a careful reading of all of Dr. Willey's testimony, we are of the opinion that his testimony concerning plaintiff's mental condition should not have been admitted. In substance, it was based on a letter from Dr. Peebles that plaintiff was normal before the accident, that she revealed psychotic tendencies when he examined her nearly two years after the accident, and that trauma can cause such condition. We are of the opinion that this testimony shows there is merely a possibility that her pre-psychotic condition was caused by the accident.
Defendants contend that certain medical and drug expenses incurred by plaintiff were not properly admissible because of insufficient proof of necessity and reasonableness.
This Court has held in several recent cases, including Dennis v. Prisock, 181 So.2d 125 (Miss. 1965), that when the plaintiff in a personal injury suit seeks to recover medical and drug bills as a part of his damages, there must be some proof that they were necessary as a result of the injuries sustained in the accident involved in the case and that the charges were reasonable. In cases where the cost of repairs of personal property is the sole element of damage involved in the suit, as in National Fire Insurance Co. of Hartford v. Slayden, 227 Miss. 285, 85 So.2d 916 (1956), necessity and reasonableness must be proven by a preponderance of the evidence the same as any other essential element of the plaintiff's case. The same is true concerning medical and drug bills in personal injury cases, except that in the latter class of cases, the Court fully recognizes the difficulties sometimes confronting the plaintiff. More discretion is given the trial court in the requirements concerning necessity and reasonableness in personal injury cases because, as illustrated by the present case, it would work an undue hardship on the plaintiff to strictly adhere to the rules of evidence concerning necessity and reasonableness. Plaintiff's physician was allowed to testify concerning the medical bill of Dr. Charles Neal of Jackson, a neurosurgeon who did not testify in the case, and as to the charges of Mississippi Baptist Hospital in Jackson. The proof concerning these items, as well as a bill for drug charges, is not entirely satisfactory, but we are of the opinion that the Court would not be justified in reversing on account of the admission of these medical and drug bills because there was, as stated in Bryan Brothers Packing Co. v. Grubbs, 251 Miss. 52, 168 So.2d 289 (1964), some proof of necessity and reasonableness which met the minimum requirements in this regard. Therefore we hold that it was not reversible error to admit the evidence concerning plaintiff's medical and drug bills.
Defendants argue that the trial court erred in admitting evidence concerning an operation for a hernia which took place about six months after the accident involved in this case. It is contended that there is not sufficient evidence to show that the hernia was caused in whole or in part by the accident. We are of the opinion that there is no merit in this contention.
Appellants assign as error the granting of the following instruction:
The Court instructs the jury for the plaintiff that the testimony of W.D. Weaver that Billy Mack Babb stated that his brakes failed him and that he didn't know that they were bad cannot *327 be considered as evidence of the truth thereof, but only be considered in impeachment of the witness, Morris Brown.
The key fact issue in the case was whether Billy Mack Babb and his superior knew that the truck being operated for the Scott County Co-op had defective brakes. Morris Brown testified that immediately after the accident Billy Mack Babb told him that defendants knew the brakes were defective. In order to impeach Morris Brown defendants offered the testimony of W.D. Weaver, who testified that Billy Mack Babb stated that his brakes failed him and that he did not know that there was anything wrong with them. Self-serving statements are not admissible; a party cannot testify for himself out of court. Bullard v. Citizens National Bank of Meridian, 177 Miss. 735, 171 So. 540 (1937). The testimony of W.D. Weaver was admissible for the purpose of impeaching witness Morris Brown. Appellants argue that the purpose for which testimony is admitted is not the proper subject for an instruction to the jury. We are of the opinion that the jury should not be instructed concerning the reason why the testimony of a witness is admitted. This constitutes a comment on the testimony and improperly singles out the testimony of such witness in violation of Mississippi Code Annotated section 1530 (1956). Instructions to the jury should not contain comments on specific evidence. White v. Miss. Power Co., 252 Miss. 97, 171 So.2d 312 (1965).
We have carefully examined the other numerous assignments of error, and while some present close questions of law, we are of the opinion that none constitute reversible error or require comment. We do not reach the question of the alleged excessiveness of the verdict.
For the reasons stated, the case is reversed and remanded for a new trial.
Reversed and remanded.
JONES, BRADY, PATTERSON and INZER, JJ., concur.