RODGERS, Justice:
This case came to this Court from the Circuit Court of the First Judicial District of Hinds County, Mississippi. It is a suit for personal injuries and property damage resulting from a collision of an automobile operated by defendant, Jack L. Daniel, and a motorcycle operated by the plaintiff, John R. McHale.
The accident occurred on Highway 28 a few miles east of Union Church, Mississippi, and across the county line in Jefferson County. The plaintiff, appellant here, was operating his motorcycle in an easterly direction on a hard surface road. The defendant, appellee here, was driving his Mustang automobile in an easterly direction, following the plaintiff. The testimony shows that the defendant came over the crest of a hill and observed the plaintiff on his motorcycle in front of him travelling in the same direction and in the same lane of traffic as that occupied by the defendant. The appellee observed that the motorcycle was rapidly slowing down; he attempted to pass in the left lane of traffic. He did not blow his horn nor give any warning of his approach. The plaintiff contended that he intended to slow down so as to turn around off the road, and that the appellee ran into his motorcycle from behind at a time when he was in his proper lane of traffic. The appellee contends that the appellant attempted to make a “U” turn and ran into the right side of his automobile. The ap-pellee’s automobile skidded forward and finally skidded sideways before striking the plaintiff’s motorcycle. The point on the highway where the impact occurred was in dispute. The plaintiff suffered bruises, lacerations and bone fracture of the left knee, requiring conservative treatment by traction. The jury returned a verdict in favor of the defendant; whereupon the plaintiff appealed and contends that the court granted three erroneous instructions to the jury, two of which merit discussion. It is also contended that the verdict was clearly against the overwhelming weight of the evidence.
Instructions numbers 10 and 9 are in the following language:
“INSTRUCTION NO. 10 FOR DEFENDANT
“The Court instructs the jury for the defendant that if the jury believes from a preponderance of the credible evidence that, at the time and place of the collision involved in this case, there was no traffic near the scene of the accident except the vehicle of the plaintiff and the defendant, that the defendant began to pass the plaintiff’s vehicle to the left at a safe distance and at a time when the plaintiff’s vehicle was completely in the right lane of travel, that there was no vehicle in the left lane of traffic for a distance sufficient to allow the defendant to safely clear the plaintiff’s vehicle, that the left lane of traffic was clearly visible to the defendant and was free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or the vehicle of the *766 plaintiff, that the plaintiff and defendant were not approaching the crest of any grade and were not upon a curve in the highway and the view of the defendant along the highway was not obstructed, that there was no bridge, viaduct, tunnel intersection, or railroad crossing within one hundred feet of the location of the passing, that there were no official traffic control signs and no center line directing the defendant to remain in the right lane and directing him not to pass, and if you further believe that, at the time the defendant was passing the plaintiff, that the plaintiff had not given any signal of any intention to turn from his straight path of travel and that no special hazard existed to indicate that it was unsafe for the defendant to pass, then the Court instructs you that the defendant was not required by law to give a horn signal or other audible signal before overtaking and passing the plaintiff.”
“INSTRUCTION NO. 9 FOR DEFENDANT
“The Court instructs the jury for the defendant Jack L. Daniel, that every operator of a motor vehicle has the right to assume and to act upon the assumption, that every other operator will exercise reasonable care and caution in traveling upon the highways of the State of Mississippi.”
The applicable part of Section 8250, Mississippi Code 1942 Annotated (1956), is in the following language:
“(a) Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet, but no horn or other warning device shall emit an unreasonably loud or harsh sound or a whistle. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway.”
Does this section of the Code require the operator of a motor vehicle to sound his horn when passing a motorcycle at a time when the motorcycle was rapidly decelerating its speed?
The tenth instruction for the defendant was obviously based upon three sections of our Mississippi Code 1942 Annotated— sections 8185, 8176 and 8192. Section 8185 permits a following vehicle to pass an overtaken vehicle except when certain conditions exist as therein enumerated. Section 8176 permits the operator of a motor vehicle to drive at a speed of sixty-five (65) miles per hour except when certain enumerated conditions exist, including special hazards. Section 8192 requires the operator of a motor vehicle to give a signal of his intention to turn from a direct course.
The defendant’s tenth instruction cata-logues the negative conditions enumerated in sections 8185 and 8176 giving the following vehicle the right to pass and then states that if “the plaintiff had not given any signal of any intention to turn from his straight path of travel and no special hazard existed (which is one of the negative conditions in section 8176 as to speed) then the court instructs you that the defendant was not required by law to give a horn signal or other audible signal before overtaking and passing the plaintiff
This instruction in its final analysis simply says that if the defendant had a right to pass the plaintiff, and he was not speeding, he was not required by law to blow his horn unless the plaintiff was at the time giving a signal indicating his intention to turn from a straight path of travel.
This instruction takes away from the jury’s consideration the fact that the motorcycle was rapidly slowing down and that such activity of the motorcyclist would have indicated to a reasonable and prudent *767 man situated in a following vehicle travel-ling at a rapid rate of speed that it “was reasonably necessary to insure safe operation (to) give audible warning with his horn” (Section 8250, Mississippi Code 1942 Annotated [1956]).
There is another reason why this instruction should not have been given — it points up facts not in evidence in an abstract manner. We said in Stewart v. White, 220 So.2d 271 (Miss.1969), that an instruction which had long been accepted by the trial courts should not be given because:
“ * * * The instruction is partially abstract in that it relates to speed and failure to have the vehicle under control when the evidence indicates that the cause of the accident was improper lookout on the part of the driver. In this regard as related to the facts of this case it is erroneous. * * * ” (220 So.2d at 273)
In the instant case there was no reason to confuse the jury with approaching vehicles, curves in the road, bridges, viaducts, tunnels, railroad crossings, and the like, since these unrelated items were not involved in the facts incident to the accident.
The rule of care required of a passing motorist is admirably expressed in 60A C.J.S. Motor Vehicles § 326(1) (1969) as follows:
“As a general rule, the operator of a motor vehicle who wishes to overtake and pass a vehicle proceeding in front of him must exercise vigilance commensurate with the surrounding conditions, and he must so manage his own automobile as not to cause injury to others under the penalty of being chargeable with negligence. The driver of the overtaken car must see to it that the conditions are such that an attempt to pass is reasonably safe and prudent, and a signal from the preceding vehicle that it is safe to pass does not relieve the driver of the following vehicle from the duty of making his own independent observation as to when it is safe for him to pass.
“In passing he must exercise reasonable care and comply with all traffic regulations, including those generally applicable to vehicles traveling in the same direction, as discussed infra § 327; and the duty of care does not shift to the overtaken vehicle until the passing has been safely made.” (60A C.J.S. Motor Vehicles § 326(1) at 337, 338)
From the same authority, at § 326(3), page 347, we have the following statement:
“In the absence of statutes or regulations providing otherwise, there is no absolute, general duty upon the driver to sound his horn before passing another automobile; however, the operator of the overtaken car ordinarily should signal, by horn or other audible means, to the driver ahead his desire to pass, when ordinary care and prudence require such a warning to insure safe operation, even in the absence of any statute to that effect. Whether such duty exists depends largely on the circumstances of the particular case.”
Again from 60A C.J.S. Motor Vehicles § 288 (1969), we find the following statement at page 168:
“Reasonable care in the operation of a motor vehicle ordinarily requires that warning of its approach be given to others. This duty frequently is imposed by governmental regulations, under which a motorist is required to give warning signals at particular places, under particular conditions, or generally whenever necessary to warn others of apparent danger or whenever necessary to insure safe operation of the motor vehicle. Such regulations have, however, been regarded as merely declaratory of the common-law duties of the operators, and the duty to give signals is not confined to places where such *768 signals are expressly required by statute.”
In the case of Clark v. Mask, 232 Miss. 65, 98 So.2d 467 (1957), this Court pointed out that it is not the law that one overtaking another in a motor vehicle is compelled to sound his horn, but we said:
“ * * * The statute, however, does not so provide. The statute imposes upon the driver of a vehicle the duty of sounding his horn when reasonably necessary to insure safe operation. This qualification was not included in the instruction and did not submit to the jury the question of determining whether or not the sounding of his horn by the driver of the vehicle in which the appellant was riding was reasonably necessary to insure safe operation. * * * ” (232 Miss, at 73, 98 So.2d at 471)
In Moak v. Black, 230 Miss. 337, 92 So. 2d 845 (1957), however, we said, in a case where an automobile collided with a boy on a bicycle, that:
“The appellee, according to his own testimony, saw the boy on the bicycle for a distance of several hundred feet before overtaking him. The road was straight and the appellee’s view was entirely unobstructed, and yet the ap-pellee neither sounded his horn nor applied his brakes to reduce the speed of his car until he got within 12 or 15 feet of the boy. It was then too late to avoid hitting him. The appellee, according to his own testimony and according to the statements made by him to the officers immediately after the accident, did not do all that he could have done, or all that the law required him to do, to avoid the accident after he first saw the boy riding his bicycle along the highway.
“In Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552, and in McMinn v. Lilly, 215 Miss. 193, 60 So.2d 603, 608, this Court has laid down the rule of care required of motorists who are about to pass pedestrians or children riding bicycles on the highway.” (230 Miss, at 345, 346, 92 So.2d at 849)
Appellee contends, however, that since the plaintiff obtained an instruction written in the words of the statute requiring passing automobile drivers “to give a horn signal at any time that it was reasonably necessary to insure safe operation of his vehicle to protect other persons using the highway,” the plaintiff’s instruction cured any error that might have occurred by reason of the granting of Instruction Number 10 for the defendant.
This Court has given considerable time to the study of this case in view of the fact that the jury decided the case on an issue of facts. Judges Rodgers, Jones, Brady, Patterson and Inzer are of the opinion that Instruction Number 10 is erroneous. Judges Ethridge, Gillespie, Smith and Robertson are of the opinion that the tenth instruction was not error, or if it were an erroneous instruction, it was harmless and does not now constitute a reversible error.
The first named Judges are of the opinion that the tenth instruction granted to the defendant was in conflict with the instruction granted to the plaintiff on the issue of warning and the rule that all instructions must be read together does not cure an erroneous instruction in conflict with a proper instruction on a vital issue where the proper instruction does not modify or clarify the erroneous instruction. Pevey v. Alexander Pool Company, Inc., 244 Miss. 25, 139 So.2d 847 (1962); Hill v. Columbus Ice Cream Co., 230 Miss. 634, 93 So.2d 634 (1957); Hatcher v. Daniels, 228 Miss. 196, 87 So.2d 490 (1956); Wallace v. Billups, 203 Miss. 853, 33 So.2d 819 (1948); Yazoo & M. V. R. Co. v. Hawkins, 159 Miss. 775, 132 So. 742 (1931).
The rule that an erroneous instruction on a material issue cannot be cured by a proper instruction on the same issue seems to be general and is universally followed. In 5 Am.Jur.2d Appeal and Error § 817 *769 (1962), at page 258, we find the following statement of the law:
“Although an instruction, in and of itself, may contain sufficient error for reversal, it may nonetheless be cured by other circumstances of the case. Where an erroneous instruction has been given on a point of law, and the appellant has the court give an instruction to the contrary and more favorable to his point of view, although the second instruction may not cure the error, it may prevent appellant from raising the question on appeal. The giving of an erroneous instruction containing reversible error cannot be cured by the giving of an inconsistent and correct instruction; but prejudicial omissions may be cured by other instructions.”
In Reid’s Branson Instructions to Juries, Vol. 1, § 138 (1960), at page 399, we find this rule expressed in perhaps more concise language:
“While ambiguities or omissions in one instruction may sometimes be corrected in another instruction without confusing the jury, it is rare that positive error can be so corrected. A material error in an instruction, complete in itself, is not cured by a correct statement of law in another instruction, for the jury cannot know which instruction is correct and the court cannot know which instruction influenced the jury. * * * ”
In Shute’s Will, 251 N.C. 697, 111 S.E.2d 851 (1960), the North Carolina Supreme Court expressed this rule in a more forceful manner by pointing out that if an erroneous and a correct instruction are given on a material matter, a new trial must be granted. The jury does not know which one is correct and the court does not know which one the jury followed.
The five Judges first above mentioned are of the opinion that Instruction Number 9 given the jury on behalf of the defendant was also a harmful error and should not have been given. Judges Smith and Robertson are of the opinion that the instruction was properly given. Judges Ethridge and Gillespie are of the opinion that the instruction is harmless.
A similar instruction to Number 9, supra, was discussed in McMinn v. Lilly, 215 Miss. 193, 60 So.2d 603 (1952), and this Court said:
“ * * * [SJecond, the defendants are in error under previous decisions of this Court in contending that the driver of a motor vehicle may assume that others on the highway will obey the laws of the road. * * * ” (215 Miss, at 202, 60 So.2d at 608).
In Rawlings v. Inglebritzen, 211 Miss. 760, 52 So.2d 630 (1951), this Court pointed out that although a motorist, when meeting other motorists on the highway, may assume that others will obey the law of the road; nevertheless, such an assumption cannot be relied upon when a motorist knew, or by the exercise of ordinary, reasonable care he should have known, that other motorists using, or about to use the road, were in a place of danger, or were violating the rules of the road. See also Hamilton v. McCry, 229 Miss. 481, 91 So. 2d 564 (1956); 60A C.J.S. Motor Vehicles § 317b (1969). This rule also applies to passing vehicles. 60A C.J.S. Motor Vehicles § 326(1), page 336 (1969). The rule, however, does not give the passing motorist the right to assume that the operator of the vehicle in front is aware of his presence so as to excuse the operator of the passing vehicle from giving warning of his approach when circumstances and conditions surrounding the situation at the time otherwise require that a reasonable and prudent man in the exercise of ordinary care would have given warning of his approach. Cf. Peel v. Gulf Transport Company, 252 Miss. 797, 174 So.2d 377 (1965); cases collected by Blashfield’s Cyclopedia of Automobile Law and Practice, Vol. 2, § 938 (1934).
We do not find it necessary to pass upon the weight of the evidence at this time *770 as to whether or not the testimony is overwhelmingly in favor of the plaintiff, because the issue as to the liability of the defendant is a question for the jury and since there must be a new trial, this issue may be submitted to a new jury.
The judgment of the trial court is hereby reversed and remanded for new trial without the use of the erroneous instructions.
Reversed and remanded.
JONES, BRADY, PATTERSON AND INZER, JJ., concur.
ETHRIDGE, C. J., GILLESPIE, P. J., and SMITH and ROBERTSON, JJ., dissent.